UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IANTHA REESE,

                        13 CV 4199 (SJ)(RER)

             Plaintiff,        **MEMORANDUM**
                                        **AND ORDER**

    -against-

PATRICK R. DONAHOE, Postmaster General
of the United States Postal Service, AMERICAN
POSTAL WORKERS' UNION, AFL-CIO,

             Defendants.
------------------------------------------------------------X
A P P E A R A N C E S:

THE LAW OFFICE OF GABRIEL WILLIAMS, LLC
1221 Avenue of the Americas, Suite 4200
New York, NY 10020
By:    Gabriel L. Williams, Esq.
Attorney for Plaintiff

UNITED STATES ATTORNEY FOR THE
EASTERN DISTRICT OF NEW YORK
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
By:    Layaliza K. Soloveichik, Assistant United
        States Attorney
Attorney for Defendant Postmaster General
of the United States Postal Service Patrick R. Donahoe

BROACH & STULBERG, LLP
One Penn Plaza, Suite 2016
New York, New York 10119
By:    Robert B. Stulberg, Esq.
        Amy F. Shulman, Esq.
Attorneys for Defendant American Postal Workers' Union

JOHNSON, Senior District Judge:

Plaintiff Iantha Reese ("Plaintiff" or "Reese") commenced this action against her former employer, the United States Postal Service (the "Postal Service") and her union, American Postal Workers' Union, AFL-CIO (the "APWU" or "National Union"), alleging that the Postal Service breached its collective bargaining agreement with the APWU (the "CBA") by placing her on emergency leave and ultimately terminating her employment without just cause, and that the APWU breached its duty of fair representation ("DFR"). Currently pending before the Court are Defendants' motions to dismiss. Defendant Postal Service moves to dismiss the action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Defendant APWU similarly moves under Rule 12(b)(6), however, because the APWU's motion presents matters outside the pleadings, its motion will be treated as one for summary judgment under Rule 56. For the reasons stated below, the Defendants' motions are GRANTED.

I. **Background**

Plaintiff was employed by the Postal Service, located at 315 Empire Boulevard in Brooklyn, New York, for over 25 years, from 1987 to January 28, 2013, and most recently, worked as a Sales and Services/Distribution Associate. The APWU is a labor organization that represents individuals employed by the

Postal Service. During her employment with the Postal Service, Reese was a member of the APWU and its local affiliate, APWU Brooklyn Local No. 251 ("Brooklyn Local").[1] Plaintiff's responsibilities at the Postal Service included conducting various financial transactions, including the selling of stamps and money orders.

On three occasions in January and February of 2011, Plaintiff's Point of Sale computer reflected shortages. The first two shortages occurred on January 12 and 31, 2011, and were for $850 and $430, respectively, which Reese reported to her supervisor, José Farrell ("Farrell"). The third shortage occurred on February 24, 2011, which, according to Plaintiff, was caused by a computer malfunction that interrupted two money order transactions, resulting in a shortage of $1,817.44 for that day. Under Farrell's direction, she explained the shortage on a routing slip (the "February Routing Slip"):

> I was 1810 short. My machine shut off in the middle of 2 money orders. One for $1000 and the other for $817.44. I called the help desk. They said to just put the shortage in and they will investigate.

Approximately one year later, on March 28, 2012, Reese was questioned by the Postal Service's Office of Inspector General ("OIG") about the three shortages. Lorraine Popper ("Popper"), a Brooklyn Local's representative, assisted Reese

---

[1] Brooklyn Local is not a party to this action.

through the interrogation. Reese does not recall whether Popper advised her to submit a sworn statement following this meeting, but was later informed by a representative of the National Union that a sworn statement should have been submitted. Following the meeting, the OIG reported its findings to Jonas Yau ("Yau"), the Acting Manager of the Postal Service, who suspended Reese without pay that same day by handing her a notice titled "Emergency Placement in Off-Duty Status (Without Pay)" (the "Emergency Placement Notice"). The Emergency Placement Notice cited reasons for Reese's suspension, which included her inconsistent responses and her violation of the Postal Service's policy prohibiting employees from issuing and cashing their own money orders.

On May 30, 2012, Yau conducted a pre-disciplinary interview, during which Plaintiff confirmed purchasing and cashing her own money orders. On June 15, 2012, Plaintiff was issued a Notice of Removal, terminating her employment for "failure to account for postal service funds," effective July 24, 2012.

The National Union and Brooklyn Local grieved Plaintiff's suspension and termination. Brooklyn Local represented Reese up to the arbitration, while the National Union represented her during the arbitration stage. The APWU served the Postal Service with a request for information and documents related to the grievance. On December 13, 2012, a hearing was held before arbitrator, Sherrie Rose Talmadge (the "Arbitrator"), during which Plaintiff testified.

During the hearing, the Postal Service sought to introduce the February Routing Slip. However, because of the Postal Service's failure to produce the routing slip when discovery was sought prior to the arbitration, the APWU objected to its late production. The Arbitrator eventually permitted its submission.

On January 28, 2013, the Arbitrator issued an award denying the APWU's grievance and finding that the Postal Service had just cause to issue Plaintiff the Emergency Placement Notice and Notice of Removal (the "Award"). In the Award, the Arbitrator noted that on the three days in question, Plaintiff sold money orders that nearly equaled the amount of the shortages, some of which were issued and cashed by Plaintiff. The Arbitrator further rejected Plaintiff's claim that the shortages resulted from computer malfunctions. She stated that the Help Desk had no record of calls from Plaintiff regarding shortages on January 12 and 31, and that the issue reported by Plaintiff regarding a money order transaction on February 24 could not have resulted in a shortage. She further reasoned that the February Routing Slip contradicted Plaintiff's purported lack of awareness that there was a shortage on February 24, 2011.

## II. The Proceedings

Initially, Plaintiff brought an action against only the Postal Service, seeking to vacate the Award. See Reese v. United States Postal Service, No. 13-CV-3046 (SJ) (RER) (E.D.N.Y). This first action was dismissed for lack of subject matter

jurisdiction and because Plaintiff was not a party to the underlying arbitration. Plaintiff then commenced this action on or about July 24, 2013, against both the Postal Service and the APWU. In this action, she alleges, in relevant part, that the APWU breached its duty of fair representation by: (a) failing to obtain the February Routing Slip from plaintiff's locker, which accounted for approximately 60% the missing the total shortage; (b) failing to submit a sworn statement by Plaintiff following the OIG interview on March 28, 2012; and (c) failing to seek a vacatur of the Award.[2] She further alleges that the Postal Service breached the CBA between it and the APWU by suspending and terminating Plaintiff.

On or about November 21, 2013, Defendant APWU filed a motion to dismiss the action for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because, however, the APWU presented matters outside the pleadings, the parties do not dispute that the motion should be treated as one for summary judgment under Rule 56. Specifically, the APWU submitted a declaration by Bernard Timmerman, the APWU's National Business Agent, in support of its motion. In the ensuing months, the APWU provided Plaintiff with Plaintiff's grievance files and other discovery that Plaintiff sought to permit Plaintiff to respond to the summary judgment motion.

---

[2] Plaintiff seems to have abandoned the claim that the APWU's failure to seek a vacatur of the Award was arbitrary and constituted a breach of the DFR. She did not advance any arguments in support of this in her Memorandum in Opposition to the Postal Services' Motion to Dismiss.

On or about October 27, 2014, the Postal Service filed its motion to motion to dismiss the action for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both Defendants advance substantially similar arguments, and state that the Complaint fails to evidence any actions by the APWU that constituted a breach of the DFR.

**III.     Legal Standard**

Claims such as this, brought by an employee alleging an employer's breach of the CBA and a Union's breach of the DFR, are commonly referred to as "hybrid section 301-fair representation claims." See Nicholls v. Brookdale Univ. Hosp., 204 Fed. Appx. 40, 41 (2d Cir. 2006). This hybrid action was created by the Supreme Court to permit a plaintiff to vacate an arbitration award. See id. To prevail on a hybrid claim, Plaintiff must show that both the Postal Service breached the CBA and the APWU breached its DFR. See id. at 42. The claims are "inextricably interdependent," and a dismissal of one claim requires the dismissal of the other. See DelCostello v. Int'l Bhd. of Teamsters, 562 U.S. 151, 164–65.

In considering a motion to dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim, the Court accepts the factual allegation asserted in the complaint as true and draws reasonable inference in favor of the Plaintiff. See Perez v. Hawk, 302 F. Supp. 2d 9, 16 (E.D.N.Y. 2004). "'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining

7

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

On a motion to dismiss, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted); see also Hayes v. Coughlin, No. 87 Civ. 7401, 1991 WL 220963, at *1 (S.D.N.Y. Oct. 16, 1991) ("Papers outside a complaint may be incorporated by reference into the complaint when such papers are referred to within the body of the complaint"). Accordingly, the Court will consider the Memorandum of Interview by the OIG, the Notice of Removal, and the Award, all of which were referenced by Plaintiff in the Complaint.

As stated above, however, it is undisputed that APWU's motion presents matters outside of the pleadings, such as the declaration of Bernard Timmerman, and should be treated as one for summary judgment. See Fed. R. Civ. P. 12(d). Summary judgment is warranted where there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. See id. at 56(a). The moving party bears the initial burden of demonstrating the

absence of a genuine issue of material fact. See id. All reasonable inferences must be drawn in the nonmoving party's favor. See Messina v. 1199 SEIU United Healthcare Workers East, 453 Fed. Appx. 25 (2d Cir. 2011).

**IV.** **Discussion**

Here, Plaintiff alleges that the APWU breached its DFR in the manner in which it handled the grievances over her suspension and termination. She specifically takes issue with the OIG's memorialization of the interview on March 28, 2012, which misconstrued her responses, and the APWU's failure to submit a sworn statement summarizing her competing interpretation of the circumstances surrounding the shortages. She states that the OIG mischaracterized her responses when the OIG stated that:

   a. the "shortages involved a money order transaction that was interrupted by a computer malfunction."
   b. on January 12, 2011, "her computer shut down in the middle of a transaction and when the machine restarted, she could not retrieve the information she inputted."
   c. Reese was aware of the Postal Service's policy prohibiting employees from purchasing and cashing money order from their stations, but nonetheless engaged in this practice because other employees were too busy to take care of her.

9

d. Reese "reiterated multiple times that she never purchased money orders with cash; she always used her debit card."

In the alternative, Plaintiff explains that the shortages were "caused by a computer malfunction;" that she knew her supervisor allowed employees to cash and purchase money order from their stations and assumed the supervisor had the discretion to override the Postal Service's policy; and that she did not exclusively use her debit card to purchase money orders, but sometimes used cash. She contends that these versions are substantially different and that the APWU's failure to submit her sworn statement was inconsistent with the APWU's practices and policies, and resulted in arbitrary conduct.

Plaintiff further takes issue with the APWU's failure to search her compartment and retrieve the February Routing Slip prior to the arbitration. She believes that the routing slip contradicted the Postal Services' assertion that Reese could not explain the shortages and argues that this had a detrimental impact on Plaintiff's ability to succeed on her grievance. She states that February Routing Slip is significant because it accounts for a large percentage of the total shortage.

A fair and lenient reading of Reese's complaint and her opposition to the motions, construed in the light most favorable to her and drawing all reasonable inferences in her favor, nevertheless necessitates the dismissal of this action. Plaintiff fails to establish that the APWU's conduct was "arbitrary, discriminatory, or in bad faith," and that the Union's conduct "seriously undermine[d] the arbitral

process," as required by the law. Barr v. United Postal Serv., 868 F.2d 36, 43 (2d Cir. 1989).

The APWU's failure to submit a sworn statement following Plaintiff's interview with the OIG can be construed as negligence at best, even if the APWU acted in contravention of its own policy. Plaintiff herself testified at the arbitration and was afforded an opportunity to rebut the OIG's alleged erroneous statements and present her version of the events. Therefore, it is unlikely that any alleged malfeasance by the APWU caused detrimental, incurable harm to the arbitral process. See id. ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach"); see also Nicholls, 204 Fed. Appx. at 42 (finding that a union's failure to obtain discovery of potentially exonerating documents did not qualify as conduct sufficiently arbitrary to satisfy the first element of DFR breach).

Similarly, the APWU's failure to procure the February Routing Slip does not amount to arbitrary conduct. See Nicholls, supra (finding that a failure to obtain discovery did not seriously undermine the arbitral process when the plaintiff testified on her own behalf). By Plaintiff's own admission, the routing slip was considered by the Arbitrator, essentially rendering the alleged harm meritless. Plaintiff's contentions that she was deprived of an opportunity to proffer arguments with regard to the routing slip in advance of the arbitration, and that it was exculpatory evidence, is spurious and unsubstantiated, given the Arbitrator's

reasoned conclusion after considering said routing slip. In fact, the Arbitrator interpreted the February Routing Slip to the Plaintiff's detriment, finding that it contradicted Plaintiff's purported lack of knowledge that a shortage occurred on February 24.

Even if this issue were to be decided in the Plaintiff's favor, the February Routing Slip only explained the shortage on February 24; it remained silent as to the January 12 and 31 transactions. The routing slip would not have exculpated Plaintiff from admittedly tendering and cashing her own money orders, the amounts of which coincided substantially to the shortage amounts on the corresponding days, and the act of which violated the Postal Service's policy. Taken together, Plaintiff's actions essentially amount to stealing. Additionally, the Complaint makes clear that the APWU made a good faith effort to obtain documents related to the grievance by serving the Postal Service with a request for information prior to the arbitration, which would have included the routing slip.

Furthermore, although Plaintiff sought to hold the summary judgment motion in abeyance until further discovery had been obtained, none of the information, construed in the light most favorable to Plaintiff, would have created a genuine issue of material fact sufficient to defeat the motions.[3]

---

[3] Plaintiff sought additional discovery to establish the agency relationship between the National Union and Brooklyn Local, the National Union's involvement prior to and during the arbitration stage, and the National Union's decision to forego a vacatur.

Defendants have fulfilled their burden in proving that the Complaint does not state a plausible claim for relief. Defendants have also established their <u>prima facie</u> showing that there are no triable issues of fact. Plaintiff's grievance was not processed in a perfunctory manner, and was fairly handled. The APWU pursued the grievance through arbitration, arguing that, due to the year-long delay in investigating the shortages, the Postal Service did not have an immediate concern that Plaintiff's continued employment would result in a loss of funds warranting Plaintiff's placement on emergency status. The APWU also argued that Plaintiff's Notice of Removal was without just cause because the Postal Service could not prove that Plaintiff was responsible for the missing funds. The Arbitrator considered and rejected these arguments, after providing Plaintiff with a full and fair hearing. In light of the above, in addition to the "wide latitude" unions are given to conduct their bargaining duties, the Court finds that the APWU's actions were within the "wide range of reasonableness" afforded to unions in representing their members. See <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499 U.S. 65, 77–78 (1991).

Since the hybrid claims are inextricably linked, and a dismissal of the breach of the DFR claim mandates the dismissal of the breach of the CBA claim, the Court need not address the remaining CBA claim. See <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 164–65 (1983). All remaining arguments have been considered and found to be without merit.

## V. Conclusion

For the reasons stated above, the Defendants' motions are granted, and the Complaint is hereby dismissed.


SO ORDERED.


Dated: March 10 , 2015 	 _____/s/_____
      Brooklyn, New York 	Hon. Sterling Johnson, Jr., Senior U.S.D.J.